# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| THE STATE OF MISSISSIPPI, ex rel. Lynn Fitch, in her official capacity as Attorney General of the State of Mississippi,<br><br>Plaintiff,<br><br>v.<br><br>3M COMPANY (f/k/a Minnesota Mining and Manufacturing Company); E. I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; DUPONT DE NEMOURS, INC.; CORTEVA, INC.; TYCO FIRE PRODUCTS, LP (successor-in-interest to The Ansul Company); CHEMGUARD, INC.; BUCKEYE FIRE EQUIPMENT COMPANY; KIDDE-FENWAL, INC.; KIDDE PLC, INC.; CHUBB FIRE, LTD.; UTC FIRE & SECURITY AMERICAS CORPORATION, INC.; RAYTHEON TECHNOLOGIES CORPORATION (f/k/a United Technologies Corporation); CARRIER GLOBAL CORPORATION; NATIONAL FOAM, INC.; ARKEMA, INC.; BASF CORPORATION; CHEMDESIGN PRODUCTS, INC.; DYNAX CORPORATION; CLARIANT CORPORATION; CHEMICALS INCORPORATED; NATION FORD CHEMICAL COMPANY; AGC, INC. (f/k/a Asahi Glass Co., Ltd.); AGC CHEMICALS AMERICAS, INC.; DEEPWATER CHEMICALS, INC.; ARCHROMA MANAGEMENT, LLC; ARCHROMA U.S., INC.; and JOHN DOE DEFENDANTS 1-49,<br><br>Defendants. | MDL No.: 2873<br><br>Master Docket No.: 2:18-mn-2873<br><br>JUDGE RICHARD M. GERGEL<br><br>Civil Case No.: 2:20-cv-4370-RMG<br><br>DIRECT FILED COMPLAINT AND JURY DEMAND PURSUANT TO CASE MANAGEMENT ORDER NO. 3 |

## TABLE OF CONTENTS

I.    **Nature of this Action**…………………………………………………………………3

II.   **Scope of this Action**………………………………………….…………………………5

III.  **Parties**………………………………………………………………………………6

IV.   **Jurisdiction and Venue**……………………………………….………………………13

V.    **Factual Allegations**

    A.  The Contaminants: PFOS and PFOA……………………………………………14

    B.  Aqueous Film-Forming Foam…………………………………………………...16

    C.  Defendants' Knowledge of the Hazards of PFOS and PFOA…………………...17

    D.  The Impact of PFOS and PFOA on the State of Mississippi……………………21

VI.   **Causes of Action**

    A.  First Cause of Action: Products Liability – Design Defect……………………...22

    B.  Second Cause of Action: Products Liability – Failure to Warn…………………24

    C.  Third Cause of Action: Trespass…………………………………………………...25

    D.  Fourth Cause of Action: Negligence……………………………………………26

    E.  Fifth Cause of Action: Gross Negligence………………………………..…..…27

    F.  Sixth Cause of Action: Public Nuisance…………………………………………29

    G.  Seventh Cause of Action: Fraudulent Transfer…………………………….....30

    H.  Eighth Cause of Action: Punitive Damages………………………………......32

VII.  **Prayer for Relief**........................................................................................32

VIII. **Demand for Jury Trial**..............................................................................34

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, the State of Mississippi, ex rel. Lynn Fitch, Attorney General of the State of Mississippi, files this Complaint and, in support thereof, states the following:

## I.    NATURE OF THIS ACTION

1.    The State of Mississippi ("Plaintiff" or "State"), by and through Attorney General Lynn Fitch, brings this action against Defendants for contamination of the natural resources of the State, including lands, waters, biota, and wildlife, as a result of the release of per- and polyfluoroalkyl substances ("PFAS") into the environment through the handling, use, disposal, and storage of products containing PFAS.

2.    PFAS are a class of man-made chemicals that include perfluorooctane sulfonate ("PFOS") and perfluorooctanoic acid ("PFOA").

3.    In this Complaint, references to PFOS and PFOA also include all of their salts and precursor chemicals.

4.    Defendants designed, manufactured, marketed, and/or sold PFOS, PFOA, and/or products containing PFOS or PFOA, including but not limited to aqueous film-forming foam ("AFFF") (collectively, "Fluorosurfactant Products").

5.    PFOS and PFOA present a significant threat to the State's natural resources and residents. PFOS and PFOA are highly mobile and persistent in the environment, and they are toxic at extremely low levels. Furthermore, they are bioaccumulative and biomagnify up the food chain.

6.    Defendants designed, manufactured, formulated, distributed, marketed, and/or sold Fluorosurfactant Products with the knowledge that these compounds were toxic and that they would be released into the environment even when used as directed and intended by Defendants.

7.     For instance, Defendant, 3M Company, began publishing peer reviewed literature in 1980 showing that humans retain PFOS in their bodies for years.  By the early 1980s, the industry suspected a correlation between PFOS exposure and human health effects.  Similarly, Defendant, DuPont, had been studying the potential toxicity of PFOA since at least the 1960s and knew that it was contaminating drinking water drawn from the Ohio River.  Yet, Defendant did not disclose to the public or to government regulators what they knew about the substance's potential effects on humans, animals, or the environment.[1]  By December 2005, the EPA uncovered evidence that DuPont concealed the environmental and health effects of PFOA, and the EPA announced the "Largest Environmental Administrative Penalty in Agency History."[2]

8.     Nevertheless, through the relevant years, Defendants continued to design, manufacture, market, and sell their Fluorosurfactant Products throughout the United States, including in Mississippi.

9.     Additionally, Defendants failed to provide adequate warnings or instructions with their Fluorosurfactant Products, both before and after selling such products. Defendants failed to adequately advise their customers, the public, or the State about the threats PFOS or PFOA pose to natural resources and human health if released into the environment.

10.    Investigation of PFOS and PFOA contamination in Mississippi is ongoing. Several sites have been identified with PFOS and PFOA contamination attributable to AFFF containing PFOS and/or PFOA, including, but not limited to, Gulfport Combat Readiness Training Center, Gulfport Naval Construction Battalion Center, Keesler Air Force Base, Columbus Air Force Base, Key Field Air National Guard Base, Jackson Air National Guard

---

[1] *Id..,* Fred Biddle, "DuPont confronted over chemical's safety," *Wilmington News Journal* (Apr. 13, 2003). The *Wilmington News Journal* is published in Wilmington, Ohio.
[2] $16.5 million.

Base, and Naval Air Station Meridian. Additional investigation and testing will undoubtedly uncover further contamination across the State.

11.     Defendants, by their actions and/or inactions, bear ultimate responsibility for the release of vast amounts of PFOS and PFOA into Mississippi's environment, contaminating the State's water resources, soils, sediments, biota, and wildlife, and threatening the health, safety, and well-being of the State's residents.

12.     Defendants' Fluorosurfactant Products have caused and will continue to cause injury to the State's environment, natural resources, and residents.

13.     Accordingly, the State, through this action, seeks to require Defendants to pay all costs necessary to fully investigate and determine the various locations throughout Mississippi where their Fluorosurfactant Products were used, stored, discharged, released, spilled, and/or disposed, as well as all areas affected by their Fluorosurfactant Products.

14.     Likewise, this action seeks to require Defendants to pay all costs necessary to investigate, assess, remediate, monitor, and restore the sites in Mississippi where their Fluorosurfactant Products were used, stored, discharged, spilled, and/or disposed, as well as any off-site areas and natural resources that have been contaminated by their Fluorosurfactant Products.

15.     Additionally, this action seeks to require Defendants to pay all past and future costs incurred by the State in investigating, monitoring, and otherwise responding to injuries and/or threats to public health, as well as damages for harm to the State's natural resources, caused by Defendants' Fluorosurfactant Products.

16.     Further, Mississippi governmental entities that purchased Defendants' Fluorosurfactant Products are now forced to spend additional money to properly dispose of any

remaining inventory. Such costs are rightfully borne by Defendants and, as such, are also sought through this action.

17.    Lastly, Plaintiff seeks from Defendants all damages that Plaintiff is entitled to recover including, but not limited to, property damages to State and local government-owned properties, economic damages, punitive damages, and all other damages, fees, costs, and equitable relief to which Plaintiff may be entitled.

## II.    SCOPE OF THIS ACTION

18.    The State asserts the causes of action described herein in its sovereign and *parens patriae* capacities as representative of all its residents, as trustee and guardian of the State's natural resources, and as an owner of property or of substantial interests in property impacted by Defendants' Fluorosurfactant Products.

19.    Plaintiff, as a sovereign state, has "a quasi-sovereign interest in the health and well-being […] of its residents in general." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 607 (1982). Plaintiff also has a quasi-sovereign "interest independent of and behind the title of its citizens, in all the earth and air within its domain." *Georgia v. Tennessee Copper Co.*, 206 U.S. 230, 237, 27 S.Ct. 618, 619 (1907). Thus, the State may act in its *parens patriae* capacity to protect the State's quasi-sovereign interests, including its interest in the health and well-being of its residents and the integrity of its natural resources.

20.    As guardian and trustee of the State's public natural resources, Plaintiff has a fiduciary duty to regulate, manage, protect, and conserve those resources for the benefit and on behalf of its residents. Miss. Code Ann. § 51-3-1. Likewise, Plaintiff has the authority to protect and enforce the rights of the State and its citizens relating to the beneficial use and conservation

of those resources. *Cinque Bambini Partnership v. Mississippi*, 491 So. 2d 508, 511-513 (Miss. 1986).

21.     Further, Plaintiff has a proprietary interest in protecting and conserving all property owned by the State (or in which the State has a substantial interest), in remediating the contamination of its property, and in preventing its future contamination.

### III.     PARTIES

22.     Plaintiff is the State of Mississippi, a body politic created by the Constitution and laws of the State.

23.     Lynn Fitch, as the present and duly elected Attorney General of the State of Mississippi, brings this action pursuant to her authority granted, *inter alia*, by Miss. Const. art. 6, § 173 (1890); Miss. Code Ann. § 7-5-1; and in her capacity as the State's Chief Legal Officer pursuant to the statutory, common, and decisional law of the State, which vests in her the right to initiate, conduct, and maintain all suits necessary for the enforcement of the laws of the State, preservation of order, and protection of public rights.

24.     Upon information and belief, he following Defendants, at times relevant to this action, designed, manufactured, formulated, marketed, distributed, and/or sold Fluorosurfactant Products that Defendants knew or reasonably should have known would enter the State of Mississippi and be released into the environment, or otherwise conducted business in the State.

25.     Defendant 3M Company ("3M"), formerly known as Minnesota Mining and Manufacturing Company, is a Delaware corporation with its principal place of business at 3M Center, St. Paul, Minnesota 55144. 3M is the only company that manufactured AFFF containing PFOS and/or its precursor chemicals. 3M is authorized to conduct business in Mississippi.

26.     Defendant E. I. DuPont de Nemours and Company ("DuPont") is a Delaware corporation with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805. DuPont is authorized to conduct business in Mississippi.

27.     Defendant The Chemours Company ("Chemours") is a Delaware corporation with its principal place of business located at 1007 Market Street, Wilmington, Delaware 19899. Chemours is registered to do business in the State of Mississippi.

28.     In 2015, DuPont spun off its "Performance Chemicals" business to Chemours, along with certain environmental liabilities. Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries arising from the manufacture and sale of fluorosurfactants and the products that contain fluorosurfactants

29.     Defendant The Chemours Company FC, LLC ("Chemours FC") is a Delaware limited liability company with its principal place of business located at 1007 Market Street Wilmington, Delaware, 19899. Chemours FC is registered to do business in the State of Mississippi. Chemours FC operates as a subsidiary of Chemours. Upon information and belief, Chemours FC is the successor-in-interest to DuPont Chemical Solutions Enterprise.

30.     Defendant DuPont De Nemours, Inc. ("New DuPont") is a Delaware corporation with its principal place of business located at 974 Centre Road, Building 730, Wilmington, Delaware 19805. Upon information and belief, DowDuPont, Inc. was formed in 2017 as a result of the merger of Dow Chemical and DuPont. DowDuPont, Inc. was subsequently divided into three publicly traded companies and on June 1, 2019, DowDuPont, Inc. changed its registered name to DuPont de Nemours, Inc.

31.     Defendant Corteva, Inc. ("Corteva") is a Delaware corporation with its principal place of business located at 974 Centre Road, Building 730, Wilmington, Delaware 19805. Upon information and belief, Corteva is one of the aforementioned spin-off companies from DowDuPont, Inc., and is believed to have assumed some of the PFAS liabilities of the former DuPont. Corteva is authorized to conduct business in Mississippi.

32.     Defendant Tyco Fire Products LP ("Tyco") is a Delaware limited partnership with principal offices located at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446. Upon information and belief, Tyco is the successor-in-interest to The Ansul Company ("Ansul") and manufactures the Ansul brand of products. Tyco is an indirect subsidiary ultimately wholly owned by Johnson Controls International, plc, an Irish public limited company.

33.     Defendant Chemguard, Inc. ("Chemguard") is a Texas corporation with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143. On information and belief, Chemguard acquired Williams Fire and Hazard Control, Inc. ("WFHC") in 2010.  On information and belief, on or around July 9, 2011, Tyco acquired Chemguard and its subsidiary, WFHC.

34.     Defendant Buckeye Fire Equipment Company ("Buckeye") is an Ohio corporation with its principal place of business at 110 Kings Road, Mountain, North Carolina 28086.

35.     Defendant Kidde-Fenwal, Inc. ("Kidde") is a Delaware corporation with its principal place of business located at One Financial Plaza, Hartford, Connecticut 06101. Upon information and belief, Kidde was part of UTC Fire & Security Americas Corporation, Inc. Upon information and belief, Kidde is the successor-in-interest to Kidde Fire Fighting, Inc.

36. Defendant Kidde PLC, Inc. ("Kidde PLC") is a Delaware corporation with its principal place of business located at 9 Farm Springs Road, Farmington, Connecticut 06032. Upon information and belief, Kidde PLC was part of UTC Fire & Security Americas Corporation, Inc.

37. Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, United Kingdom registration number 134210, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions including, but not limited to, Chubb Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc.

38. Defendant UTC Fire & Security Americas Corporation, Inc. ("UTC Fire & Security") is a Delaware corporation with its principal place of business at 13995 Pasteur Blvd., Palm Beach Gardens, Florida 33418. UTC Fire & Security is registered to do business in the State of Mississippi. Upon information and belief, UTC Fire & Security was a division of United Technologies Corporation.

39. Defendant Raytheon Technologies Corporation ("RTC") is a Delaware corporation with its principal place of business at 10 Farm Springs Road, Farmington, Connecticut 06032. Upon information and belief, RTC was formerly known as United Technologies Corporation ("UTC") until on or around April 2020 (collectively, "RTC f/k/a UTC"). Upon information and belief, RTC f/k/a UTC has conducted business throughout the United States, including in the State of Mississippi.

40. Defendant Carrier Global Corporation is a Delaware corporation with its principal place of business located at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418. On

information and belief, on or around April 3, 2020, UTC completed the spin-off of one of its reportable segments into a separate publicly traded company known as Carrier Global Corporation ("Carrier"). Carrier's operations are classified into three segments: HVAC, Refrigeration, and Fire & Security. Carrier's Fire & Security products and services are sold under brand names including Chubb and Kidde.

41.    Defendant National Foam, Inc. ("NF") is a Delaware corporation with its principal place of business located at 141 Junny Road, Angier, North Carolina 27501. NF is a wholly owned indirect subsidiary of Angus International Safety Group, Ltd. Upon information and belief, NF manufactures the Angus Fire brand of AFFF products.

42.    Defendant Arkema, Inc. ("Arkema") is a Pennsylvania corporation with its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Arkema is authorized to conduct business in Mississippi.

43.    Defendant BASF Corporation ("BASF") is a Delaware corporation with its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932.  Upon information and belief, BASF acquired Ciba-Geigy Corporation and/or Ciba Specialty Chemicals. BASF is authorized to conduct business in Mississippi.

44.    Defendant ChemDesign Products, Inc. ("ChemDesign") is a Texas corporation with its principal place of business located at 2 Stanton Street, Marinette, Wisconsin 54143.

45.    Defendant Dynax Corporation ("Dynax") is a Delaware corporation with its principal place of business located at 103 Fairview Park Drive, Elmsford, New York 10523.

46.    Defendant Clariant Corporation ("Clariant") is a New York corporation with its principal place of business located at 4000 Monroe Road, Charlotte, North Carolina 28205. Clariant is authorized to conduct business in Mississippi.

47.     Defendant Chemicals Incorporated ("Chem Inc.") is a Texas corporation with its principal place of business located at 12321 Hatcherville Road, Baytown, Texas 77521.

48.     Defendant Nation Ford Chemical Company ("Nation Ford") is a South Carolina corporation with its headquarters located at 2300 Banks Street, Fort Mill, South Carolina 29715. Upon information and belief, Nation Ford manufactured fluorochemicals for use in AFFF.

49.     Defendant AGC, Inc. ("AGC"), formerly known as Asahi Glass Co., Ltd. ("Asahi Glass"), is a Japanese corporation with its principal place of business located at 1-5-1, Marunouchi, Chiyoda-ku, Tokyo 100-8405 Japan. Upon information and belief, Asahi Glass Co., Ltd. changed its name to AGC, Inc. in 2018.

50.     Defendant AGC Chemicals Americas, Inc. ("AGC America") is a Delaware corporation with its principal place of business located at 55 E. Uwchlan Ave., Suite 201, Exton, Pennsylvania 19341. Upon information and belief, AGC America is a subsidiary of AGC and/or Asahi Glass.

51.     Defendant Deepwater Chemicals Company ("Deepwater") is a Delaware corporation with its principal business office at 196122 E County Road 40, Woodward, Oklahoma 73801.

52.     Defendant Archroma Management, LLC ("Archroma") is a foreign limited liability company registered in Switzerland, with a principal business address of Neuhofstrasse 11, 4153 Reinach, Basel-Land, Switzerland.

53.     Defendant Archroma U.S., Inc. ("Archroma U.S.") is a Delaware corporation with its principal place of business located at 5435 77 Center Dr., #10, Charlotte, North Carolina 28217.  Upon information and belief, Archroma U.S. is a subsidiary of Archroma. Archroma U.S. is authorized to conduct business in Mississippi.

54.     Upon information and belief, Defendants John Doe 1-49 were manufacturers and/or sellers of Fluorosurfactant Products that are responsible for the damages caused to Plaintiff described herein. Although the identities of the John Doe Defendants are currently unknown, it is expected that their names will be ascertained during discovery, at which time Plaintiff will move for leave of this Court to add those individuals' actual names to the Complaint as Defendants.

55.     Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates, and divisions of the named Defendants.

56.     When the term "Defendants" is used alone, it refers to all Defendants named in this Complaint jointly and severally. When reference is made to any act or omission of the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

## IV.    JURISDICTION AND VENUE

57.     This Honorable Court has jurisdiction pursuant to 28 U.S.C. § 1331 based on a federal question arising from the Government Contractor defense as raised and relied upon by the Defendants who moved to form the Multi-District Litigation ("MDL") No. 2873. Specifically, Defendants relied upon this federal question initially as a basis to remove cases from state courts across the country and ultimately as a basis to form the current MDL before this Honorable Court. In fact, this Honorable Court has issued Case Management Order

No. 3 ("CMO 3") allowing for the direct filing of AFFF contamination lawsuits into the MDL. As the allegations alleged by the State of Mississippi turn, in large part, on the use of AFFF at a variety of federally operated facilities, this matter falls directly into the category of cases to which the federal question at issue applies.

58.    Venue is appropriate in this judicial district pursuant to CMO 3. Plaintiff states that but for CMO 3 permitting direct filing in the United States District Court for the District of South Carolina, Plaintiff would have filed this Complaint in the United States District Court for the Southern District of Mississippi. Further, in accordance with CMO 3, Plaintiff hereby designates the United States District Court for the Southern District of Mississippi as the "Home Venue" as this case may have originally been filed there.

59.    The United States District Court for Southern District of Mississippi is a proper venue for this matter and the contamination made the basis of this litigation is located, in part, therein.

## V.    FACTUAL ALLEGATIONS

### A.  THE CONTAMINANTS: PFOS AND PFOA

60.    PFOS and PFOA are man-made chemicals within a class known as perfluoroalkyl acid ("PFAA"). PFAAs are part of the larger chemical family known as PFAS. PFAA is composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, and the last carbon atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature, which is a reason why these molecules are so persistent. PFOS and PFOA contain eight carbon-fluorine bonds. For this reason, they are sometimes referred to as "C8."

61.     PFAAs are sometimes described as long-chain and short-chain, depending on the number of carbon atoms contained in the carbon chain. PFOS and PFOA are considered long-chain PFAAs because they contain eight carbon atoms in their chains; short-chain PFAAs have six or less carbon atoms in their chains.

62.     PFOS and PFOA are highly water soluble, which increases the rate at which they spread throughout the environment, contaminating soil, groundwater, and surface water. Their mobility is made more dangerous by their persistence in the environment and resistance to biologic, environmental, or photochemical degradation.[3]

63.     PFOS and PFOA are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver. They have been found globally in water, soil and air, as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.[4]

64.     PFOS and PFOA are persistent in the human body. A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.[5]

65.     Since they were first produced, information has emerged showing negative health effects caused by exposure to PFOS and PFOA.

66.     According to the United States Environmental Protection Agency ("EPA,") "…studies indicate that exposure to PFOA and PFOS over certain levels may result in…developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects

---

[3] EPA, Drinking Water Health Advisory for Perfluorooctanoic Acid (PFOA), EPA Document Number: 822-R-16-005 (May 2016) at 16; Drinking Water Health Advisory for Perfluorooctane Sulfonate (PFOS), EPA Document Number: 822-R-16-004 (May 2016) at 16, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.
[4] EPA Document Number: 822-R-16-005 (May 2016) at 18-20, 25-27; and EPA Document Number: 822-R-16-004 (May 2016) at 19-21, 26 28.
[5] EPA Document Number: 822-R-16-005 (May 2016) at 55; and EPA Document Number: 822-R-16-004 (May 2016) at 55.

(e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes)."[6]

67.     EPA has also warned that "there is suggestive evidence of carcinogenic potential for PFOS."[7]

68.     EPA has noted that drinking water can be an additional source of PFOA/PFOS in the body in communities where these chemicals have contaminated water supplies. In communities with contaminated water supplies, "such contamination is typically localized and associated with a specific facility, for example…an airfield at which [Fluorosurfactant Products] were used for firefighting."[8]

## B. AQUEOUS FILM-FORMING FOAM

69.     AFFF is a type of water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports and military bases, among other places.

70.     The AFFF designed, manufactured, marketed, distributed, and/or sold by Defendants contained PFOS and/or PFOA.

71.     PFOS and/or the chemical precursors to PFOS contained in 3M's AFFF were manufactured by 3M's patented process of electrochemical fluorination ("ECF"). 3M was the only manufacturer that used ECF; all other AFFF producers manufactured fluorosurfactants for use in AFFF through the process of telomerization, which produced fluorotelomers, including PFOA and/or the chemical precursors to PFOA.

---

[6] "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.
[7] "Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)" U.S. Environmental Protection Agency Office of Water Health and Ecological Criteria Division, EPA Document Number: 822-R-16-002, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.
[8] "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

72.     AFFF can be made without PFOS or PFOA. Fluorine-free and short-chains foams do not release PFOS or PFOA into the environment.

73.     AFFF is used to extinguish fires that are difficult to fight, particularly fires that involve petroleum or other flammable liquids. AFFF is typically sprayed directly onto a fire, where it works by coating the ignited fuel source, preventing its contact with oxygen and suppressing combustion.

74.     When used as the Defendants intended and directed, Defendants' AFFF releases PFOS and/or PFOA into the environment.

75.     Once PFOS and PFOA are free in the environment, they do not hydrolyze, photolyze or biodegrade under typical environmental conditions, and are extremely persistent in the environment. As a result of their persistence, they are widely distributed throughout soil, sediment, surface water and groundwater.

76.     The use of Defendants' Fluorosurfactant Products as directed and intended by the Defendants allowed PFOS and PFOA to enter the State of Mississippi's natural resources, where these compounds migrated through the subsurface and into the groundwater, thereby contaminating the surface water, soil, sediment, and groundwater, as well as causing other extensive and ongoing damage to Plaintiff.

77.     Due to the chemicals' persistent nature, among other things, these chemicals have and continue to cause injury and damage to Plaintiff.

C.  DEFENDANTS' KNOWLEDGE OF THE HAZARDS OF PFOS AND PFOA

78.     On information and belief, by the early 1980s, Defendants knew or reasonably should have known, among other things, that: (a) PFOS and PFOA are toxic, and (b) when AFFF or other products containing PFOS, PFOA and/or their precursor chemicals is sprayed or

otherwise released in the open environment, per the instructions given by the manufacturer, PFOS and PFOA readily migrate through the subsurface, mix easily with surface water and groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

79.    Defendants also knew, or reasonably should have known, that PFOS and PFOA could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOS and PFOA can persist in the body for prolong periods of time.

80.    In 1980, 3M published data in peer reviewed literature showing that humans retain PFOS in their bodies for years. Based on that data, 3M estimated that it could take a person up to 1.5 years to clear just half of the accumulated PFOS from their body after all exposures had ceased.[9]

81.    By the early 1980s, the industry suspected a correlation between PFOS exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOS in workers' bodies and birth defects in children of workers.

82.    In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects – one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[10]

---

[9] Letter from 3M to Office of Pollution Prevention and Toxics, EPA titled "TSCA 8e Supplemental Submission, Docket Nos. 8EHQ-0373/0374 New Data on Half Life of Perfluorochemicals in Serum," available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.
[10] Memorandum "C-8 Blood Sampling Results, Births and Pregnancies," available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.

83.     Beginning in 1983, 3M documented a trend of increasing levels of PFOS in the bodies of 3M workers. In an internal memo, 3M's medical officer warned "we must view this present trend with serious concern. It is certainly possible that … exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."[11]

84.     Based on information and belief, in 2000, under pressure from the EPA, 3M announced that it was phasing out PFOS and U.S. production of PFOS; 3M's PFOS-based AFFF production did not fully phase out until 2002.

85.     From 1951, DuPont, and on information and belief, Chemours, designed, manufactured, marketed and sold Fluorosurfactant Products, including Teflon nonstick cookware, and more recently PFAS feedstocks such as Forafac 1157 and Forafac 1157N, for use in the manufacturing of AFFF products.

86.     On information and belief, in 2001 DuPont manufactured, produced, marketed, and sold Fluorosurfactant Products and/or PFAS feedstocks to some or all of the AFFF product manufacturers for use in their AFFF products that were discharged into the environment and contaminated the State of Mississippi, including its property and its natural resources.

87.     DuPont had been studying the potential toxicity of PFOA since at least the 1960s and knew that it was contaminating drinking water drawn from the Ohio River and did not disclose to the public or to government regulators what they knew about the substance's potential effects on humans, animals, or the environment.[12]

---

[11] Memorandum "Organic Fluorine Levels," August 31, 1984, available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.
[12] *Id..,* Fred Biddle, "DuPont confronted over chemical's safety," *Wilmington News Journal* (Apr. 13, 2003). The *Wilmington News Journal* is published in Wilmington, Ohio.

88.    By December 2005, the EPA uncovered evidence that DuPont concealed the environmental and health effects of PFOA, and the EPA announced the "Largest Environmental Administrative Penalty in Agency History."[13] The EPA fined DuPont for violating the Toxic Substances Control Act "Section 8(e)—the requirement that companies report to the EPA substantial risk information about chemicals they manufacture, process or distribute in commerce."[14]

89.    By July 2011, DuPont could no longer credibly dispute the human toxicity of PFOA, which it continued to manufacture. The "C8 Science Panel" created as part of the settlement of a class action over DuPont's releases from the Washington Works plant had reviewed the available scientific evidence and notified DuPont of a "probable link" between PFOA exposure and the serious (and potentially fatal) conditions of pregnancy-induced hypertension and preeclampsia.[15,16] By October 2012, the C8 Science Panel had notified DuPont of a probable link between PFOA and five other conditions—high cholesterol, kidney cancer, thyroid disease, testicular cancer, and ulcerative colitis.

90.    In July 2015, DuPont spun off its chemicals division by creating Chemours as a new publicly-traded company, once wholly owned by DuPont. By mid-2015, DuPont had dumped its perfluorinated chemical liabilities into the lap of the new Chemours.

91.    Notwithstanding this knowledge, Defendants negligently and carelessly: (a) designed, manufactured, marketed, distributed, and/or sold Fluorosurfactant Products; (b) issued

---

[13] $16.5 million.

[14] U.S. Envtl. Prot. Agency, Reference News Release, "EPA Settles PFOA Case Against DuPont for Largest Environmental Administrative Penalty in Agency History" (Dec. 14, 2005), https://www.epa.gov/enforcement/reference-news-release-epa-settles-pfoa-case-against-dupont-largest-environmental (last viewed January 30, 2018).

[15] Under the settlement, "probable link," means that given the available scientific evidence, it is more likely than not that among class members a connection exists between PFOA/C8 exposure and a particular human disease.

[16] The C8 Science Panel, Status Report: PFOA (C8) exposure and pregnancy outcome among participants in the C8 Health Project (July 15, 2011), http://www.c8sciencepanel.org/pdfs/Status_Report_C8_and_pregnancy_outcome_15July2011.pdf (last viewed January 28, 2018).

instructions on how Fluorosurfactant Products should be used and disposed of (namely, by washing the foam into the soil or wastewater system), thus improperly permitting PFOS, PFOA and/or their precursor chemicals to contaminate the State of Mississippi, including its property and natural resources; (c) failed to recall and/or warn the users of Fluorosurfactant Products, negligently designed products containing or degrading into PFOS and/or PFOA, of the dangers of surface water, soil, sediment and groundwater contamination as a result of standard use and disposal of these products; and (d) further failed and refused to issue the appropriate warnings and/or recalls to the users of Fluorosurfactant Products, notwithstanding the fact that Defendants knew or could reasonably ascertain the identities of the purchasers of their Fluorosurfactant Products.

92.     As a direct and proximate result of Defendants' actions and/or inactions alleged in this Complaint, Plaintiff's property and natural resources have been and will continue to be contaminated with PFOA and PFOS, creating an environmental hazard, unless such contamination is remediated. As a direct and proximate result of Defendants' actions and/or inactions, Plaintiff must assess, evaluate, investigate, monitor, treat, remove, clean up, correct, and/or remediate PFOA and PFOS contamination within the State of Mississippi at significant expense, loss, and damage to Plaintiff.

93.     Defendants had a duty and breached their duty to evaluate and test such Fluorosurfactant Products adequately and thoroughly to determine their potential human health and environmental impacts before they sold such products. Defendants also had a duty and breached their duty to minimize the environmental harms caused by Fluorosurfactant Products.

21

## D.  THE IMPACT OF PFOS AND PFOA ON THE STATE OF MISSISSIPPI

94.    PFOS and PFOA have been detected in varying amounts, at varying times, in the State of Mississippi and its natural resources. It is the contention of Plaintiff that any detectible level of PFOS and/or PFOA on its property and in its natural resources requires investigation, treatment, remediation, and monitoring.

95.    The detection and/or presence of PFOS and/or PFOA, and the threat of further detection and/or presence of PFOS and/or PFOA, in the State of Mississippi and its natural resources in varying amounts and at varying times has resulted, and will continue to result, in significant injuries and damage to Plaintiff.

96.    On information and belief, the invasion of the State of Mississippi and its natural resources with PFOS and PFOA is recurring, resulting in new harm to Plaintiff on each occasion.

97.    The injuries to Plaintiff caused by Defendants' conduct constitute an unreasonable interference with, and damage to, Plaintiff, its property, its natural resources, and its citizens. Plaintiff's interests in protecting its property, natural resources, and citizens constitute a reason for seeking the relief and damages described herein.

## VI.    CAUSES OF ACTION

## A.  FIRST CAUSE OF ACTION: PRODUCTS LIABILITY – DESIGN DEFECT

98.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

99.    Defendants were engaged in the business of researching, designing, manufacturing, testing, distributing, marketing and selling Fluorosurfactant Products.

100.    Defendants manufactured, marketed and/or sold Fluorosurfactant Products for use in controlling and extinguishing aviation, marine, fuel, and other flammable liquid fuel fires.

101.    Defendants represented, asserted, claimed, and warranted that their Fluorosurfactant Products could be used in conformity with accompanying instructions and labels in a manner that would not cause injury or damage.

102.    As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and/or marketers of Fluorosurfactant Products, Defendants owed a duty to all persons whom Defendants' Fluorosurfactant Products might foreseeably harm, including Plaintiff, not to manufacture, sell, or market any product which is unreasonably dangerous for its intended and foreseeable uses.

103.    Defendants' Fluorosurfactant Products used in and/or by the State of Mississippi were used in a reasonably foreseeable manner and without substantial changes in the condition in which they were sold.

104.    Defendants knew, or should have known, that use of Defendants' Fluorosurfactant Products in their intended manner would result in the spillage, discharge, disposal, or release of PFOS and/or PFOA into the surface water, soil, sediment, and groundwater of the State of Mississippi.

105.    Defendants' Fluorosurfactant Products used within the State of Mississippi were defective in design and unreasonably dangerous because, among other things: (a) PFOS and PFOA cause natural resource contamination, even when used in their foreseeable and intended manner; (b) even at extremely low levels, PFOS and PFOA render drinking water unfit for consumption; (c) PFOS and PFOA pose significant threats to public health; and (d) PFOS and PFOA create real and potential damage to the environment.

106.    PFOS and PFOA pose a greater danger to the environment than would be expected by ordinary persons and the general public.

107.    At all times relevant herein, Defendants were capable of designing, manufacturing, or utilizing feasible alternatives that did not contain or degrade into PFOS or PFOA. PFAS with shorter carbon chains than PFOS and PFOA are less toxic and do not pose as great a threat to the environment and human health as do PFOS and PFOA.

108.    As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, and will continue to incur, costs and damages related to the contamination of the State of Mississippi, its property, its natural resources, and its citizens with PFOS and/or PFOA, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, and/or disposal of the contamination, operating, maintenance and consulting costs, legal fees, diminution of property value, and all other equitable and applicable damages.

## B.  SECOND CAUSE OF ACTION: PRODUCTS LIABILITY – FAILURE TO WARN

109.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

110.    As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and/or marketers of Fluorosurfactant Products, Defendants had a duty to issue warnings to Plaintiff, the public, water providers, and public officials of the risks posed by PFOS and PFOA.

111.    Defendants knew that Fluorosurfactant Products would be purchased, transported, stored, handled, and used without notice of the hazards that PFOS and PFOA pose to human health and the environment.

112.    Defendants breached their duty to warn by unreasonably failing to provide Plaintiff, public officials, purchasers, downstream handlers, and/or the general public with warnings about the potential and/or actual threat to human health and contamination of the

environment by PFOS and PFOA, despite Defendants' knowledge that PFOS and PFOA were real and potential threats to the environment and human health.

113.     Fluorosurfactant Products purchased or otherwise acquired from Defendants were used, discharged, released, and/or disposed of in the State of Mississippi.

114.     Defendants' Fluorosurfactant Products were used in a reasonably foreseeable manner and without substantial changes in the condition in which the products were sold.

115.     Defendants' Fluorosurfactant Products used in the State of Mississippi were defective in design and unreasonably dangerous for the reasons set forth above.

116.     Despite the known and/or foreseeable environmental and human health hazards associated with the use and/or disposal of Defendants' Fluorosurfactant Products within the State of Mississippi, including contamination of the State of Mississippi, its property, its natural resources, and its citizens with PFOS and PFOA, Defendants failed to provide adequate warnings of, or take any other precautionary measures to mitigate, those hazards.

117.     In particular, Defendants failed to describe such hazards or provide any precautionary statements regarding such hazards in the labeling of their Fluorosurfactant Products.

118.     As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, and will continue to incur, costs and damages related to the contamination of the State of Mississippi, its property, its natural resources, and its citizens with PFOS and/or PFOA, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, and/or disposal of the contamination, operating, maintenance and consulting costs, legal fees, diminution of property value, and all other equitable and applicable damages.

## C.  THIRD CAUSE OF ACTION: TRESPASS

119.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

120.    Plaintiff is the owner and operator of a public water supply system, fire department, airport, and other relevant structures associated therewith. Defendants knew, or in the exercise of reasonable care should have known, that PFOS and PFOA contaminate water resources, including water resources utilized by and are the property of public water providers, such as Plaintiff.

121.    Defendants failed to properly warn against the use of Fluorosurfactant Products such that they proximately caused and continue to cause PFOS and PFOA to contaminate the State of Mississippi, its property, and its natural resources.

122.    The contamination of the State of Mississippi, its property, its natural resources, and its citizens has varied over time and has not yet ceased. PFOS and PFOA continue to migrate into and enter the soil, sediment, surface water, and groundwater of the State. The contamination is reasonably abatable.

123.    Plaintiff has not consented to, and does not consent to, this trespass.

124.    Defendants knew or reasonably should have known that Plaintiff would not consent to this trespass.

125.    As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, and will continue to incur, costs and damages related to the contamination of the State of Mississippi, its property, its natural resources, and its citizens with PFOS and/or PFOA, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, and/or disposal of the contamination, operating, maintenance and

26

consulting costs, legal fees, diminution of property value, and all other equitable and applicable damages.

## D. FOURTH CAUSE OF ACTION: NEGLIGENCE

126.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

127.    As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and/or marketers of Fluorosurfactant Products, Defendants owed a duty to Plaintiff, as well as to all persons whom Defendants' Fluorosurfactant Products might foreseeably harm, to exercise due care in the instructing, labeling, and warning of the handling, control, use, and disposal of Defendants' Fluorosurfactant Products.

128.    Despite the fact that Defendants knew that PFOS and PFOA are toxic, can contaminate soil and water resources, and presents significant risks to human health and the environment, Defendants negligently: (a) designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold Fluorosurfactant Products; (b) issued instructions on how Fluorosurfactant Products should be used and disposed of, thus improperly permitting PFOS and/or PFOA to enter and contaminate the State of Mississippi; (c) failed to recall and/or warn the users of Fluorosurfactant Products of the dangers of soil and water contamination as a result of standard use and disposal of these products; and (d) failed and refused to issue the appropriate warnings and/or recalls to the users of Fluorosurfactant Products regarding the proper use and disposal of these products, notwithstanding the fact that Defendants knew, or could determine with reasonable certainty, the identities of the purchasers of their Fluorosurfactant Products.

129.    As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, and will continue to incur, costs and damages related to the contamination of the State of Mississippi, its natural resources, and its citizens with PFOS and/or PFOA, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, and/or disposal of the contamination, operating, maintenance and consulting costs, legal fees, diminution of property value, and all other equitable and applicable damages.

E.  FIFTH CAUSE OF ACTION: GROSS NEGLIGENCE

130.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

131.    Plaintiff alleges that Defendants negligently, carelessly, and recklessly designed, manufactured, formulated, labeled, marketed, instructed, and sold Fluorosurfactant Products, and/or negligently, carelessly, and recklessly recommended application and disposal techniques for their Fluorosurfactant Products, in such a way that directly and proximately resulted in the past and ongoing contamination of the State of Mississippi, including its residents, natural resources, waters, lands, biota, and wildlife with PFOS and/or PFOA.

132.    At all times pertinent hereto, Defendants owed a duty to the State and its residents to use reasonable care and prudence in the designing, manufacturing, labeling, marketing, instructing, and selling of their Fluorosurfactant Products.

133.    Defendants breached such duties or reasonable care and prudence by directly or proximately, whether by their actions or inactions, releasing and discharging Fluorosurfactant Products within Mississippi in such a way as to result in the past and ongoing contamination of the State and its residents, lands, waters, natural resources, biota, and wildlife with PFOS and/or PFOA, which Defendants knew to be persistent, bioaccumulative, and toxic.

28

134.    Such breaches of duty by Defendants were committed intentionally, recklessly, or with gross negligence, or negligently with knowledge by Defendants that PFOS and/or PFOA would be released into the environment, where they would not biodegrade, and with knowledge that such contaminants, unless fully and effectively treated, removed, or remediated, would easily migrate through the soil, sediment, surface water, and groundwater of the State of Mississippi.

135.    As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, and will continue to incur, costs and damages related to the contamination of the State of Mississippi, its natural resources, and its citizens with PFOS and/or PFOA, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, and/or disposal of the contamination, operating, maintenance and consulting costs, legal fees, diminution of property value, and all other equitable and applicable damages.

## F. SIXTH CAUSE OF ACTION: PUBLIC NUISANCE

136.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

137.    Defendants, through their actions and/or inactions in the designing, manufacturing, formulating, marketing, labeling, and selling of their Fluorosurfactant Products, have created a condition which has harmed, and continues to harm, the State of Mississippi. Such condition constitutes an unreasonable interference with a right common to the general public who are residents of the State of Mississippi.

138.    The Defendants' conduct unreasonably interferes with a public right, in that:

i.    The migration of Defendants' Fluorosurfactant Products into the State's soil, sediment, surface water, groundwater, biota, wildlife, and other natural

resources constitutes a significant interference with the health, safety, peace, comfort, and convenience of the general public of the State of Mississippi; and/or

ii. The migration of Defendants' Fluorosurfactant Products into the State's soil, sediment, surface water, groundwater, biota, wildlife, and other natural resources has produced permanent or long-lasting deleterious effects, and Defendants knew, or reasonably should have known, that their conduct would have deleterious effects upon and violate the rights of the general public of the State of Mississippi.

139.    As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, and will continue to incur, costs and damages related to the contamination of the State of Mississippi, its natural resources, and its citizens with PFOS and/or PFOA, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, and/or disposal of the contamination, operating, maintenance and consulting costs, legal fees, diminution of property value, and all other equitable and applicable damages.

## G.  SEVENTH CAUSE OF ACTION: FRAUDULENT TRANSFER (DUPONT AND CHEMOURS)

140.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

141.    Plaintiff seeks equitable and other relief pursuant to the Uniform Fraudulent Transfer Act against DuPont.

142.    Upon information and belief, in February 2014, DuPont formed The Chemours Company as a wholly-owned subsidiary and used it to spin off DuPont's "Performance Chemicals" business line in July 2015.

143.    Upon information and belief, at the time of the spinoff, DuPont's Performance Chemicals division contained the AFFF and/or PFAS business segments. In addition to the transfer of the Performance Chemicals division, Chemours accepted broad assumption of liabilities for DuPont's historical use, manufacture, and discharge of PFAS.

144.    Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries from the manufacture and sale of Fluorosurfactant Products.

145.    Upon information and belief, as a result of the transfer of assets and liabilities described in this Complaint, DuPont limited the availability of assets to cover judgements for all of the liability for damages and injuries from the manufacture and sale of Fluorosurfactant Products.

146.    Upon information and belief, DuPont has (a) acted with intent to hinder, delay and defraud parties, or (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and (i) was engaged or was about to engage in a business for which the remaining assets of Chemours were unreasonably small in relation to the business; or (ii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

147.    Upon information and belief, DuPont engaged in acts in furtherance of a scheme to transfer its assets out of the reach of parties, such as the Plaintiff, that have been damaged as a result of DuPont's actions as described in this Complaint.

148.    Upon information and belief, DuPont and Chemours acted without receiving a reasonably equivalent value in exchange for the transfer of obligations, and DuPont believed, or reasonably should have believed, that it would incur debts beyond Chemours' ability to pay as they became due.

149.    Plaintiff seeks to avoid the transfer of DuPont's liabilities for the claims brought in this Complaint and to hold DuPont jointly and severally liable for any damages or other remedies that may be awarded by this Court or a jury under this Complaint.

150.    Plaintiff further reserves such other rights and remedies that may be available to it as may be necessary to fully compensate Plaintiff for the damages and injuries it has suffered as alleged in this Complaint.

## H.  EIGHTH CAUSE OF ACTION: PUNITIVE DAMAGES

151.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

152.    Defendants intentionally, recklessly, or with gross negligence, manufactured, designed, formulated, labeled, marketed, and sold Fluorosurfactant Products with knowledge that their Fluorosurfactant Products would likely end up in Mississippi, where they would be used, discharged, or released into the environment, resulting in the continuous and ongoing contamination of the State, its residents, lands, waters, natural resources, biota, and wildlife with PFOS and/or PFOA, which Defendants knew to be persistent, bioaccumulative, and toxic.

153.     Plaintiff is therefore entitled to an award of punitive damages of and from Defendants to punish Defendants for their egregious conduct and to deter similar conduct in the future by the Defendant and others similarly situated thereto.

154.     In the event of an award of punitive damages, the State of Mississippi is entitled to recover and seeks an award of its reasonable attorneys' fees incurred in the prosecution of this action.

## VII.     PRAYER FOR RELIEF

WHEREFORE, Lynn Fitch, Attorney General for the State of Mississippi, prays that this Complaint be received and filed and that, after consideration hereof, the Court enter its Order granting unto the State of Mississippi and its citizens the following relief:

1. A judgement against the Defendants, jointly and severally, for all relief prayed for herein;

2. Compensatory damages according to proof including, but not limited to:

    a. costs and expenses related to the past, present, and future investigation, sampling, testing, and assessment of the extent of PFAS contamination within the State of Mississippi, including but not limited to that arising from the storage and use of AFFF;

    b. costs and expenses related to the past, present, and future treatment and remediation of the State of Mississippi's PFAS contamination, including but not limited to that arising from the storage and use of AFFF;

    c. costs and expenses associated with and related to the removal and disposal of the State of Mississippi's PFAS contamination, including but not limited to that arising from the storage and use of AFFF;

      d.  costs and expenses related to the past, present, and future installation and maintenance of monitoring mechanisms to assess and evaluate PFAS within the State of Mississippi including but not limited to that arising from the storage and use of AFFF; and

      e.  costs and expenses related to the disposal of the State's and its municipalities' inventory of Defendants' Fluorosurfactant Products.

3.     Diminution of property value;

4.     Punitive damages;

5.     Consequential damages;

6.     Costs, disbursements, and attorneys' fees of this lawsuit;

7.     Pre-judgment and post-judgment interest; and

8.     Any other and further relief as the Court deems just, proper, and equitable.

## VIII.    DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial.

      RESPECTFULLY SUBMITTED, this the 17th day of December 2020.

      _Scott Summy_

      Scott Summy (TX Bar 19507500)
      **BARON & BUDD, P.C.**
      3102 Oak Lawn Avenue, Suite 1100
      Dallas, TX 75219-4281
      Telephone: (214) 521-3605
      Fax: (214) 520-1181
      Cary McDougal (TX Bar 13569600)
      Carla Burke Pickrel (TX Bar 24012490)
      Cristina Sanchez (TX Bar 24041856)

**COSSICH, SUMICH, PARSIOLA
& TAYLOR, LLC**
8397 Highway 23, Suite 100
Belle Chasse, LA 70037
Telephone: (504) 394-9000
Fax: (504) 394-9110
Philip F. Cossich, Jr. (LA Bar 1788)
Darren Sumich (LA Bar 23321)
David A. Parsiola (LA Bar 21005)
Brandon J. Taylor (LA Bar 27662)
Christina M. Cossich (LA Bar 32407)
Andrew J. Cvitanovic (LA Bar 34500)
Luana N. Smith (LA Bar 35534)

**HERRING, LONG & CREWS**
129 E. Pace Street
Canton, MS 39046
Telephone: (601) 859-2573
Fax: (601) 859-3955
James H. Herring (MS Bar 2380)

**ATTORNEYS FOR MISSISSIPPI
ATTORNEY GENERAL, LYNN FINCH**
Post Office Box 220
550 High Street, Suite 1200
Jackson, Mississippi 39205
Tricia L. Beale (MS Bar 99113)
Special Assistant Attorney General
Consumer Protection Division
Mississippi Attorney General's Office
1141 Bayview Ave, Suite 402
Biloxi, Mississippi  39530
Telephone:  228-386-4404
Facsimile: 228-386-4407
Email:  tricia.beale@ago.ms.gov